IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY KIRKES,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>　　　　　Defendant.<br>_____/ | CASE NO.  1:04-cv-06008 TAG<br><br>MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |

　　　　Plaintiff Nancy Kirkes ("claimant" or "plaintiff") seeks  judicial review of an administrative decision denying her claim for disability insurance benefits ("DIB") under the Social Security Act ("Act").  Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed her complaint on July 26, 2004 (Doc. 1), and her opening brief on June 22, 2005.  (Doc. 17).  The Commissioner filed her opposition to the appeal on July 22, 2005 (Doc. 18). Claimant did not file a reply brief.

　　　　Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge.  (Docs. 6 and 9).  By an order dated March 31, 2005, this action was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 10).

**JURISDICTION**

　　　　On June 13 and 18, 1997, claimant filed applications for, respectively, supplemental security income ("SSI") and disability insurance benefits. (Administrative Record ("AR") 29).  Claimant alleged an inability to work beginning January 31, 1985 due to a number of impairments, including the following issues documented in the  medical evidence: "a back impairment, carpal tunnel

syndrome, a thumb injury, bronchitis, hemorrhoids, bowel complaints, chronic fatigue syndrome and depressive symptoms." (AR 30, 31). These applications were denied initially, again on reconsideration, and yet again on May 17, 1999 after an administrative hearing before Administrative Law Judge ("ALJ") David J. Manley. (AR 29-40).

On August 10, 2000, claimant again applied for DIB[1], and she once again asserted that she became unable to work on January 31, 1985. (AR 84-86). This application, too, was denied initially and upon reconsideration. (AR 15). At claimant's request, an administrative hearing was conducted on February 12, 2003, whereupon ALJ Laura Speck Havens adopted the prior determination of ALJ Manley that claimant was not disabled at any time through May 17, 1999. (AR 15). ALJ Havens also determined that claimant was not disabled for the period commencing after ALJ Manley's decision (May 18, 1999) through December 31, 2000 (the last quarter of DIB coverage for which claimant was eligible). (AR 21, 29). The Appeals Council denied claimant's request for review on May 21, 2004 (AR 4-6), leaving the ALJ's decision of February 12, 2003, as the final decision of the Commissioner.

On July 26, 2004, 66 days after the Appeals Council decision, claimant filed an appeal with the district court pursuant to 42 U.S.C. § 405(g). (Doc. 1). This 66 day filing period facially violates section 405(g), which states that judicial review is predicated on the filing of a civil action "within sixty days after the mailing" of notice of decision. However, the "60-day requirement is not jurisdictional, but rather constitutes a period of limitations." Bowen v. City of New York, 476 U.S. 467, 478 (1986). Moreover, the Social Security Administration has extended the filing time by regulation to allow a filing within 60 days after the date a claimant *receives* notice of the Appeals Council's final action. 20 C.F.R. §§ 404.981. Such notice is presumed to have been received within five days after the date on the notice, 20 C.F.R. § 422.210(c), in which case a claimant has 65 days to file an appeal. Here, as the 65th day was a Sunday, claimant's appeal (filed on Monday, July 26, 2004) was timely. See Shows v. Dep't of Health and Human Services, 740 F.2d 891, 891 (11th Cir.

---

[1] Claimant apparently did not apply for SSI benefits on this occasion, perhaps because her workers' compensation payments totaled over $600 per month. (AR 470). See 42 U.S.C. § 1382a(A)(2)(B)("workmen's compensation payments" are included in determining SSI eligibility).

2

1984)(the sixty-day section 405(g) limitations period is incremented by the regulatory five-day extension for mailing and, when such period ends on a Sunday, it is extended to Monday pursuant to Fed. R. Civ. P. 6(a)).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here.

Claimant was born on May 2, 1944, making her 55 years old at the time of ALJ Manley's first disability determination on May 17, 1999 (AR 29-40, 458) and 58 years old at the time of ALJ Havens's subsequent written determination on February 12, 2003. (AR 15-22, 458). At the administrative hearing before ALJ Havens, claimant testified that she had obtained her GED and additional junior college credits. (AR 458). Claimant testified that she could no longer work as of January 31, 1995, the date when she started having lower back problems attributed to a work-related injury. (AR 459). A workers' compensation claim was filed and, according to claimant, she receives benefits of $316 every two weeks. (AR 470). In addition to her workers' compensation benefits, claimant stated that, at the time of the hearing and for the past six months, she had been working four-hour days in a training program as a paid receptionist, with an hourly wage of $6.75. (AR 459-60).

As to her ailments, claimant testified that she suffers from fibromyalgia, chronic fatigue, diabetes (for which she does not test herself) and depression (for which she does not treat). (AR 461, 464, 471-72). She stated that she has pain in her back from a surgically repaired herniated disc that later re-herniated, as well as pains that "roam around the body" from her knee to her shoulder to her fingers and arms (which become numb). (AR 467). Given these medical issues, claimant testified that she could not perform any of the jobs that she had held in the past - newspaper reporter (1985-88), retail sales (1989-90), and retail cleaner and cashier (1990-95) - because they involved either heavy lifting (claimant stated that she could only lift "10 pounds carefully") or pressure to perform. (AR 461, 467).

In terms of her daily activities, claimant stated that she is able to dress and bathe herself, but very slowly. (AR 462). She cooks, but mostly fast foods in a microwave. (AR 462). She washes

dishes, but doesn't have many. (AR 462). She vacuums, but only once in a while. (AR 462). She does the laundry and grocery shopping. (AR 462-63). Claimant testified that she watches television for an hour at night and can drive a car for 45 minutes, but that she can only sit for 15 to 20 minutes at a time. (AR 463, 467).

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work she has performed in the past. If claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e),

416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-02 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan,

877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

## ALJ'S FINDINGS

ALJ Havens declined to reopen the prior decision of ALJ Manley, leaving in place his earlier determination that claimant was not disabled at any time through May 17, 1999. (AR 15).  In conducting the five step sequential analysis for the period beginning subsequent to May 17, 1999, ALJ Havens relied upon Ninth Circuit authority to the effect that an ALJ's prior determination that a claimant is not disabled gives rise to a presumption of continuing non-disability. (AR 16-17).  See Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988)("The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability").

**Step One**

ALJ Havens found at step one that claimant "has not performed substantial gainful activity since May 18, 1999."  (AR 16).

**Step Two**

At step two, ALJ Havens noted that ALJ Manley before her had found "that the claimant suffered from chronic bronchitis, chronic fatigue syndrome, and a back impairment, which he found to be severe."  (AR 17).  Relying upon the "res judicata effect [that] must be given to an administrative law judge's findings," consistent with Chavez and Social Security Acquiescence Ruling ("Acquiescence Ruling") 97-4(9), 62 Fed. Reg. 64038-01 (1997), ALJ Havens adopted these

findings. (AR 17).

### Step Three

At step three, ALJ Havens noted that ALJ Manley before her had found that, while severe, claimant's impairments did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. (AR 17). ALJ Havens adopted this finding. (AR 17).

### Step Four

Upon reviewing the medical evidence subsequent to May 17, 1999 (AR 17-20), ALJ Havens adopted the findings of ALJ Manley before her (AR 20) and concluded that claimant had the residual functional capacity to perform all work related activities with the following limitations: an ability to lift and carry up to twenty pounds occasionally, and up to ten pounds frequently; an ability to stand/walk up to six hours in a workday; and an ability to sit up to six hours in a workday. (AR 21). Based upon this conclusion as to claimant's residual functional capacity, ALJ Havens found that claimant could perform her past relevant work as a retail sales associate and display artist. (AR 21).

### Step Five

Having found that claimant could perform her past relevant work, ALJ Havens did not reach step five of the sequential analysis. (See AR 21).

## ISSUES

Claimant's Opening Brief raised the following four issues for consideration:

A. Whether vocational testimony adduced at the hearing requires reversal or remand.

B. Whether the ALJ erred in her step two determination.

C. Whether the ALJ erred by failing to fully consider steps two, three and five of the sequential analysis.

D. Whether the ALJ erred in rejecting claimant's credibility.

E. Whether the ALJ erred at step four of the sequential analysis.

This Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A.      Changed Circumstances**

Preliminary to - and largely dispositive of - the issues raised by claimant is one fundamental question: whether claimant has met her burden of establishing "changed circumstances." This is because, when ALJ Manley's May 17, 1999 finding of non-disability (AR 29-40) became final, a presumption of continuing non-disability arose. When operative, this presumption may only be overcome by establishing "changed circumstances" such that a claimant's impairments have become "more severe." Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988)(per curiam); Pearson v. Secretary of Health and Human Services, 780 F. Supp. 682, 685 (E.D. Cal. 1991). Moreover, it is claimant who must bears the burden of proving "changed circumstances." Brawner, 839 F.2d at 433.

      **1.      Medical Evidence of Changed Circumstances**

Claimant's brief includes several paragraphs wherein a claim is made that ALJ Havens failed to review claimant's "new and/or worsening medical impairments." (Doc. 17 at p. 5). However, the very list of "new and/or worsening medical impairments" cited by claimant establishes that there was, in fact, nothing new and/or worsening, for essentially all such impairments were noted either *before* or both *before and after*, the original non-disability determination by ALJ Manley on May 17, 1999 (AR 29-40):

    1.      Epstein Barr Virus - Claimant's citation is to a medical record that was created on October 17, 1997 (Doc. 17 at p. 5, AR 210), before ALJ Manley's determination of non-disability in 1999.

    2.      Positive creatine protein - Claimant's citation is to a medical record that was created in 1997 (Doc. 17 at p. 5, AR 211), before ALJ Manley's determination.

    3.      Positive Tinel sign - Claimant's citation is to a medical record that was created in 1998 (Doc. 17 at p. 5, AR 141), before ALJ Manley's determination.

    4.      Tender trigger points - Claimant's citation is to medical records that were created in 1998 and 2000 (Doc. 17 at p. 5, AR 165, 199), both before and after ALJ Manley's determination.

    5.      Decreased joint motion with tightness and weakness of muscles - Claimant's citation is to medical records that were created in 1998 (Doc. 17 at p. 5, AR 166, 168), before ALJ Manley's

determination.

      6.      Positive hemoglobin - This test result did occur in February 13, 2001 (AR 160).

      7.      Abnormal EMG results - Claimant's citation is to a medical record that was created in 1996 (Doc. 17 at p. 5, AR 202), before ALJ Manley's determination.

      8.      Recurrent disc herniation - Claimant's citation is to a medical record that was created in 1998 (Doc. 17 at p. 5, AR 229), before ALJ Manley's determination. Other evidence referenced by claimant as to the status of her disc herniation in 2004 (Doc. 17 at p. 5) is not relevant to whether claimant was disabled between May 18, 1997 and December 31, 2000.

      9.      Fatigue - Claimant's citation is to a medical report dated January 25, 2001 (Doc. 17 at p. 5, AR 121). However, fatigue was a key consideration in the disability application denied by ALJ Manley. (See AR 34).

      10.      COPD (Chronic Obstructive Pulmonary Disease) - Claimant's citation is to a medical record that was created in February, 1999 (Doc. 17 at p. 5, AR 136), before ALJ Manley's determination.[2]

      11.      Sjogren's Disease - Claimant's citation is to medical records that were created in 1998 (Doc. 17 at p. 5, AR 196, 199), before ALJ Manley's determination.

      12.      Obesity - Claimant's citation is to medical records both before and after ALJ Manley's determination. (Doc. 17 at p. 5, AR 163, 168). According to these records, claimant weighed more in 1998 (203 pounds) than she did in 2001 (184 pounds), indicating an improvement in this condition. (Compare AR 163 with AR 168).

**2.    Subjective Evidence of Changed Circumstances**

Apart from the objective medical evidence, another source of information as to whether claimant's impairments had worsened could potentially be her subjective complaints. However, ALJ Havens found that claimant's allegations were "not wholly credible" (AR 21), thereby eliminating any subjective basis for a determination of changed circumstances. Claimant objects that the ALJ's

---

[2] Claimant also cites to AR 177 with respect to COPD, but the undersigned is unable to determine with certainty the date that this medical record was prepared. The undersigned notes that the document reflects a diagnosis of sinusitis and bronchitis and dates including "12-23" and "12/24/98."

credibility determination was insufficient. (Doc. 17 at pp. 6-7).

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-82. If claimant satisfies this test - and if there is no evidence of malingering - the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Id. at 1281. Such specificity is crucial so as to enable effective judicial review. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

Here - upon first synopsizing claimant's visits with various physicians (AR 17-19) - ALJ Havens concluded by specifically identifying the inconsistencies between claimant's subjective complaints and the findings of an examining physician:

> "Although the claimant receives worker's compensation benefits for back pain, Dr. Stone observed the claimant to have nearly a full range of motion in her back. Although the claimant alleges that she suffers from fibromyalgia, Dr. Stone observed no pain on palpatation of any muscle group. Although the claimant alleges a limited ability to sit, stand, and walk, Dr. Stone observed a full range of motion in all joints of all extremities. . . . The claimant stated that she did not check her blood sugar level because she had too many things to do." (AR 20).[3]

---

[3] Claimant asserts several deficiencies in Dr. Stone's consultative examination.. First, claimant objects that Dr. Stone did not review claimant's medical records. (Doc. 17 at p. 3). However, it is evident that Dr. Stone took an extensive medical history from claimant and set forth that history in her report. (AR 439). Thus, as contemplated by the regulations, Dr. Stone "consider[ed], and provide[d] some explanation or comment on, your major complaint(s) . . . found during the history and examination or reported from the laboratory tests." by 20 C.F.R. § 404.1519n(c)(7) (emphasis added).

Second, claimant states that Dr. Stone did not do a trigger point exam for fibromyalgia or any blood work for CFS. (Doc. 17 at p. 3). However, Dr. Stone explicitly noted that claimant had "no pain with palpation of any muscle group." (AR 441). Furthermore, whether blood work or any other diagnostic tests were required were within Dr. Stone's

In light of the foregoing, the undersigned finds that ALJ Havens sufficiently articulated a number of inconsistencies justifying her decision to discredit claimant's subjective complaints, and that these inconsistencies were well supported by substantial evidence in the record. Brawner, 839 F.2d at 433 (upon giving "great weight to [the] ALJ's credibility assessment," the court concluded that it was supported by substantial evidence).

**B.  Vocational Testimony**

Claimant asserts that ALJ Havens improperly rejected the vocational testimony that was adduced at her administrative hearing. (Doc. 17 at pp. 3-4). At the hearing, the ALJ had posed a hypothetical which included exertional limitations that were more restrictive than those adopted in her final written determination. (AR 475)(fine feeling and fine manipulation on only an occasional basis). The vocational expert testified that there were no available jobs given the limitation. (AR 475).

As noted above, ALJ Havens adopted the findings of ALJ Manley, as she was obligated to do upon her determination that claimant had not established "changed circumstances." This led her to conclude - as did ALJ Manley (AR 38) - that claimant's residual functional capacity did not include a fine feeling or fine manipulation restriction (AR 20-21). Such a conclusion necessarily and properly negated the hypothetical posed to the vocational expert at the administrative hearing. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)("If the assumptions in the hypothetical are not

---

discretion. 20 C.F.R. § 404.1519m ("The responsibility for deciding whether to perform [diagnostic tests] rests with the medical source designated to perform the consultative examination").

Third, claimant states that Dr. Stone considered both her fibromyalgia and CFS to be "previous" problems. (Doc. 17 at p. 3, AR 442). However, Dr. Stone simply reported her impressions. As she wrote: "Previous diagnosis of fibromyalgia and chronic fatigue syndrome with normal joint and muscle exam today." (AR 442). Similarly, claimant protests that Dr. Stone assumed that claimant's diabetes was a historical problem. (Doc. 17 at p. 3, 442). Once again, however, Dr. Stone simply reported her impressions: "Diabetes mellitus, by history probably adequately controlled on medications without known retinopathy . . . . No known nephropathy. Peripheral neuropathy symptoms but normal exam today." (AR 442).

Finally, claimant complains that Dr. Stone deemed her lumbar pathology as "distant past." (Doc. 17 at p. 3). However, what Dr. Stone actually wrote was that claimant's lumbar disc *surgery* was distant past, as it was, since it was performed in 1995. (AR 274, 442). Dr. Stone further noted claimant's "persisting lower lumbar pain, mild to moderate but without evidence of nerve root compression." (AR 442). From claimant's history, Dr. Stone also noted a CT scan which indicated reherniation, but that claimant had not had repeat back surgery. (AR 439).

supported by the record, the opinion of the vocational expert . . . has no evidentiary value").

**C.     Step Two Determination**

Claimant claims that ALJ Havens both (1) adopted the "faulty conclusion of the prior ALJ" *without* examination of the prior or current evidence and (2) "impliedly reopen[ed] the previous decision," presumably by examining its bases. (Doc. 17 at p. 4). Apart from the fact that these two arguments are inconsistent with one another (i.e., ALJ Havens either did or did not examine prior evidence), the Court finds that the argument is without merit. As noted above, ALJ Havens properly reviewed the evidence that had accrued subsequent to ALJ Manley's decision in assessing whether "changed circumstances" existed. To be sure, this review was set forth in detail not at step two, but later in ALJ Havens' step four residual functional capacity analysis. (See AR 17-20, and specifically the ALJ's conclusion at AR 20). Under the logic of Lewis v. Apfel, 236 F.2d 503 (9th Cir. 2001), this was sufficient. As stated therein: "[Case law] simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" Id. at 513.

**D.     Step Five**

Claimant asserts error at step five of the sequential analysis. (Doc. 17 at p. 6). However, having found that claimant had the residual functional capacity to perform her prior relevant work, the ALJ never reached step five. (AR 21). There was no error.

**E.     Claimant's Credibility**

Claimant protests that the ALJ Havens erred in specifying the bases for her rejection of claimant's credibility. (Doc. 17 at pp. 6-7). This Court already has addressed that credibility assessment, and how it was presented by ALJ Havens, and has found it supported by substantial evidence in the record.

**F.     Step Four**

Claimant asserts that ALJ Havens failed to comply with SSR 82-62 pertaining to past relevant work, but fails to state the nature of such non-compliance. (Doc. 17 at p. 8). Regardless, insofar as ALJ Havens found that there had been no "changed circumstances," her adoption of ALJ's Manley's non-disability determination, including claimant's residual functional capacity and past

relevant work, was proper.

Reference is also made, by claimant, to the fact that she had turned 55 and now has a favorable Grid application. (Doc. 17 at p. 8). However, claimant already was 55 at time of ALJ Manley's first disability determination on May 17, 1999 (AR 29-40, 458). Accordingly, there was no "changed circumstance" on account of age. Social Security Acquiescence Ruling ("Acquiescence Ruling") 97-4(9), 62 Fed. Reg. 64038-01 (1997)("changed circumstances" include "a change in the claimant's age category under 20 CFR 404.1563 or 416.963).

## **CONCLUSION**

For the reasons outlined above, the undersigned finds no error in the ALJ's analysis. As such, the Commissioner's decision to deny disability benefits is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.

The clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Nancy Kirkes.

IT IS SO ORDERED.

Dated: **March 15, 2006**       **/s/ Theresa A. Goldner**
**j6eb3d**                       UNITED STATES MAGISTRATE JUDGE